Merrimack,  }
June, 1898.  }

## QUIMBY v. BOSTON & MAINE RAILROAD.

Certain evidence considered insufficient to warrant the inference, as matter of law, that injuries to a servant resulted from an apparent danger, or from one within the scope contemplated by both parties as incident to the service, and which the servant, from his knowledge of the situation, reasonably ought to have anticipated.

CASE, for personal injury. Trial by jury. At the close of the evidence for the plaintiff, upon motion of the defendants, the court directed a verdict to be returned for them, to which the plaintiff excepted.

*Sargent, Hollis & Niles*, for the plaintiff.

*Frank S. Streeter* and *John M. Mitchell*, for the defendants.

BLODGETT, J. Briefly summarized, the material facts are these: The plaintiff is a machinist, and at the time of his injury was and for many years had been in the employ of the defendants in their shop in Concord, operating a lathe, the power for which, as for other machinery on the floor, " was obtained from a counter-shaft running longitudinally through the shop and supported by timbers running in the same direction at a height of ten or twelve feet above the floor. This counter-shaft was operated by belts from the main shaft, which was situated a few feet west of the counter-shaft and parallel with it. A little lower than and west of the main shafting, and along its entire length, was a runway,— a walk over which employees passed to put on belts, oil the machinery, and do other work about the main shafting. This runway was composed of planks suspended from the floor above by rods bolted through the floor timbers. The runway was eight or ten inches higher than the counter-shaft timbers, and distant from them about twelve or fourteen feet. The motion and jar of the machinery caused the runway to vibrate from east to west, the vibration being greatest at the southerly end of the shop and gradually diminishing towards the northerly end, where the runway was made fast to the wall of the building. At a point opposite the plaintiff's lathe, which was located near the southerly end of the shop, the vibration was from three sixteenths to one quarter inch.

" Upon the main shaft, near the plaintiff's lathe, was a large pulley, known as the ' wheel press ' pulley, upon which was a

belt which furnished power to a machine upon the floor of the shop. Owing to the method of operating this machine, it was necessary that the workmen engaged in its operation should at all times have access to the pulley for the purpose of adjusting the belt. This was effected by extending a plank across from the runway to the counter-shaft timbers."

Some three months before the plaintiff's injury, the plank fell while he was at work at his lathe, and barely missed striking him. He immediately called the attention of the defendants' foreman, who had general charge and supervision of the shop and the machinery, to the fact that the plank had fallen, and told him that "if it hit anybody, it would probably hurt him very badly." Sometime later this plank was replaced by another unsecured one in substantially the same position, which subsequently fell upon the plaintiff while he was in the discharge of his duties, causing the injuries complained of. He first noticed the second plank some three weeks prior to his injury, and testified that he supposed it was fastened. He had no occasion to go upon it, and from his place of work could not see whether it was or was not fastened. He knew that a plank southerly of it, extending easterly from the runway and used as a walkway for workmen engaged in oiling and caring for the overhead machinery, was fastened, and also another one, about one hundred feet north and extending to the counter-shaft timbers. There was some evidence tending to show that, within the plaintiff's knowledge, planks used by workmen for stagings in making overhead repairs had been temporarily left stretching across from the runway to the counter-shaft unsecured and unfastened; but there was no evidence that those required for permanent use at a particular place were so left, aside from the two that fell, as before stated.

Upon these facts, we think that the order directing a verdict for the defendants was erroneous. The circumstances attending the injury not only tended, in our opinion, to show negligence on the part of the defendants to such an extent as to throw upon them the burden of rebutting it, but they were also of such a character that it could not properly be held, as matter of law, that the injury resulted from a "seen danger," or from one within the scope which both of the parties contemplated as incident to the service, or that the plaintiff, from his knowledge of the situation, reasonably ought to have anticipated. Exceptions sustained.

*New trial granted.*

PARSONS, J., did not sit: the others concurred.